**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| David Stapleton, in his capacity as court-appointed Receiver for Tingo Group, Inc., f/k/a MICT, Inc.,<br><br>Plaintiff,<br><br>-v-<br><br>United Bank for Africa, PLC,<br><br>Defendant. | Case No. _______<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

Plaintiff David Stapleton, solely in his capacity as the court-appointed receiver (the "Receiver") for Tingo Group, Inc., formerly MICT, Inc. ("Plaintiff" or "Tingo Group"), by and through its undersigned attorneys, submits this Complaint against Defendant United Bank for Africa, PLC ("Defendant" or "UBA"), and alleges as follows. Unless otherwise indicated, references to "Plaintiff" in this Complaint refer to Tingo Group, acting through the Receiver, and, with respect to events before the Receiver's appointment, to Tingo Group (formerly MICT).

## SUMMARY OF ACTION

1. This case involves a stunning fraud executed through two corporate transactions consummated in New York by Nigerian national Dozy Mmobuosi ("Mmobuosi") and his essential co-conspirator, Defendant UBA. The first transaction involved the Plaintiff's December 2022 purchase of Nigerian company, Tingo Mobile Limited ("Tingo Mobile"), from Tingo, Inc., a Nevada corporation headquartered in New York that Mmobuosi controlled. The second transaction involved Plaintiff's February 2023 purchase of a second Nigerian company, Tingo Foods PLC ("Tingo Foods"), directly from Mmobuosi. Both transactions closed and the

governing contracts were executed in New York; those contracts are governed by New York law; and New York is the designated forum selected for litigation arising out of the transactions.

2. UBA's concerted assistance was mission critical to both fraudulently induced transactions. Specifically, UBA fabricated bank account statements to corroborate each company's completely fictional financial statements so that Plaintiff and its auditors and due diligence advisors would accept them as true both before and after the transactions. UBA's knowing and intentional involvement in the scheme from inception is plain from, among other things, its direct efforts to conceal the scheme when short sellers publicly claimed the companies were frauds months after Plaintiff had acquired them. After those accusations, UBA provided the fabricated bank account statements directly to the law and accounting firms Plaintiff retained to investigate the allegations. The copies UBA gave these firms were identical to (a) those that Plaintiff received in its pre-transaction due diligence; and (b) statements UBA itself provided after the transactions to Plaintiff's auditors preparing financial statements for three separate SEC reporting periods. These facts, among others set forth below, make UBA's direct and intentional involvement clear.

3. Based on UBA's concerted support of his fraudulent scheme, Mmobuosi misappropriated approximately $50 million from Plaintiff, enriched himself by tens of millions of dollars more through extensive insider trading, and destroyed approximately $367 million in Plaintiff's enterprise value.

4. In December 2023, the Securities and Exchange Commission ("SEC") filed a civil complaint against Mmobuosi and certain U.S. entities he controlled in the United States District Court for the Southern District of New York. The SEC subsequently obtained a default judgment against Mmobuosi, ordering disgorgement of $156,672,705.86 and other civil penalties and relief.

5. In January 2024, the U.S. Department of Justice unsealed an indictment against Mmobuosi in the Southern District of New York for Conspiracy to Commit Securities Fraud, Securities Fraud, and Filing False SEC Filings. Mmobuosi is a fugitive.

6. Plaintiff brings this action to recoup the massive harm it has suffered as a result of UBA's and Mmobuosi's egregious conspiratorial misconduct.

**THE PARTIES**

7. Tingo Group is a Delaware corporation with its principal place of business in Montvale, New Jersey. Tingo Group is the successor of MICT, which changed its name to Tingo Group, Inc. in February 2023 after the transactions that are the subject of this action.

8. Plaintiff David Stapleton is the Receiver for Tingo Group. The Receiver was appointed by the United States District Court for the District of New Jersey on March 31, 2026, in *Hadron Master Fund, et al. v. Tingo Group, Inc.*, No. 2:25-cv-08009-JKS-JRA (D.N.J.) (the "Receivership Action"), by a Consent Order Appointing Receiver, ECF No. 30 (the "Receivership Order"). The Receiver is a citizen of California. The Receiver brings this action solely in his capacity as Receiver and on behalf of Tingo Group.

9. The Receivership Order vests the Receiver with exclusive authority over Tingo Group and its assets, including its claims and causes of action, and expressly authorizes the Receiver to investigate, commence, and prosecute claims on behalf of Tingo Group against third parties. As the Receivership Order required, the Receiver obtained leave of the court in the Receivership Action to commence litigation, which the court granted on July 27, 2026. (Receivership Action, ECF No. 53 (granting Receiver's Motion for Leave, ECF No. 52).) This action is brought for the benefit of the receivership estate.

10. Defendant UBA is a Nigerian public limited liability company operating in New York. It is regulated by the United States Office of the Comptroller of the Currency; a member of the United States Federal Reserve Clearing system; and licensed and registered with the

New York Department of Financial Services. UBA has been operating in New York, New York, for at least 40 years, with its New York offices currently located at 575 5th Ave, New York, NY 10017. UBA operates its New York branch directly and not through a separately incorporated subsidiary.

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because complete diversity of citizenship exists between, on the one hand, the Receiver who is a citizen of California and the Delaware incorporated Tingo Group, on whose behalf the Receiver sues, and the Nigerian Defendant, on the other, and the amount in controversy is greater than $75,000, exclusive of interest and costs.

12. UBA is subject to personal jurisdiction under New York's long-arm statute, N.Y. C.P.L.R. § 302, based on its tortious conduct directed toward and conducted in New York, the purposefully intended effects of that tortious conduct in New York, and its systematic transacting of business within New York, including with respect to the claims alleged herein. Personal jurisdiction is also proper because UBA acted in concert with its co-conspirators Mmobuosi and his alter ego companies Tingo, Inc. and Tingo International Holdings Inc. ("TIHI"). Tingo, Inc. was headquartered in New York, and Mmobuosi and Tingo, Inc. were present in New York when they induced and consummated these transactions in New York.

13. Specifically, this action involves two fraudulent corporate transactions between Plaintiff and UBA's co-conspirators, Tingo, Inc. and Mmobuosi. Both of these transactions were orchestrated, executed, and consummated in New York, New York, and the governing agreements governed by New York law, and designated New York courts as the forum for disputes. The first transaction involved the December 1, 2022 sale of Tingo Mobile to Plaintiff by the New York headquartered (and Mmobuosi alter ego) Tingo, Inc. The second transaction was the February 9, 2023 Mmobuosi sale in New York of Tingo Foods to Plaintiff.

14. UBA also allowed its federally licensed office in New York at 575 Fifth Avenue, New York, New York 10017 to be used in support of this fraudulent scheme and transmitted fraudulent bank statements to Plaintiff's advisors and auditors in New York as part of the conspiracy.

15. As a result of these New York-based frauds, in 2023, Mmobuosi was indicted on several counts of securities fraud in the United States District Court for the Southern District of New York. Also in 2023, the SEC filed an enforcement action against him in the United States District Court for the Southern District of New York arising from the same series of fraudulent transactions.

16. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2), (3) because a substantial part of the events and omissions giving rise to the claims occurred in this judicial district and, further, Defendant is subject to personal jurisdiction in this District.

## STATEMENT OF FACTS

### A. Mmobuosi Imports a Massive Fraudulent Scheme to the United States

17. Since no later than 2019, Mmobuosi had been operating a massive fraudulent scheme in Nigeria involving several alter ego entities he controlled, including Nigerian company Tingo Mobile and its parent TIHI, a Delaware corporation that Mmobuosi controlled. From fiscal year 2016-2018, Tingo Mobile's financial statements reported cumulative revenues of almost $1 billion and profits of almost $200 million; in fact, the company was not operational and each of the actual values for these metrics was virtually zero.

18. In 2020, to profit from this fraud, Mmobuosi sought access to the U.S. capital markets for Tingo Mobile by way of a direct publicly traded listing or through a reverse merger with an already-public company. After a failed 2020 effort at a direct exchange listing, Mmobuosi realized that Tingo Mobile would be subjected to far more rigorous due diligence and auditing in the United States than in Nigeria and that third-party corroboration for Tingo

Mobile's fictional financial statements would be necessary. Consequently, in February 2021, Tingo Mobile opened its primary operating account at UBA and conspired with senior people at the bank to support Mmobuosi's fraudulent scheme in exchange for a share in its proceeds.

19. In August 2021, Mmobuosi convinced an SEC registered OTC Nevada company, iWeb, Inc. ("iWeb"), to purchase all the shares of Tingo Mobile from Mmobuosi's alter ego TIHI at a $3.7 billion valuation. As part of the transaction, iWeb changed its name to Tingo, Inc. and moved its headquarters to New York, NY. Mmobuosi also became Tingo, Inc.'s CEO as well as its controlling shareholder through TIHI.

20. The transaction's $3.7 billion valuation was based on purported Tingo Mobile financial results, touted publicly when the transaction was announced, showing $616 million in 2020 revenues, over 9 million subscribers, and almost 30 million mobile phones and related devices supplied since 2014. Purportedly audited financial statements also showed over $1.3 billion in revenues from 2017-2019, profits of approximately $235 million over that period, and cash or cash equivalents of $222 million. In fact, Tingo Mobile had no revenues, profits, or customers and only $16.63 in the bank.

21. Having secured access to a publicly traded U.S. company, Mmobuosi began using UBA to overcome the more rigorous audit and investor scrutiny associated with a publicly traded company. In November 2021, Tingo, Inc. and its auditors prepared and filed their SEC Q3 2021 quarterly report and financial statements showing over $100 million in Tingo Mobile revenues since the merger and nearly $177 million on a pro former basis for the entire quarter. It would later submit its FY2021 SEC report and audited financial statements reporting FY2021 Tingo Mobile revenues of $651.0 million post-acquisition and $865.8 million pro forma for the entire 2021 fiscal year. This financial reporting was completely fictional as Tingo Mobile had no revenues during FY2021. The financial statements prepared

by Tingo, Inc. and its auditors for these reports were based on, and corroborated by, bank statements fabricated by UBA.

22. Based on UBA's fabricated bank statements, the FY 2021 financials also falsely claimed an opening cash balance of $26.7 million, credits of approximately $970 million, and a closing balance of approximately $128.5 million. In fact, the account had an opening balance of about $120, credits of about $833,000 and a closing balance of under $4,000. In addition, the fabricated bank records included other fake transaction records, including about $245 million in purported Nwassa platform receipts through "Paystack," and over $1 billion in lease payments that did not exist.

23. Mmobuosi and UBA did the same throughout the first three quarters of 2022. For Q1 2022, Tingo, Inc. reported and its auditors approved over $257 million in revenues, over $25 million in cash or cash equivalents, $1.13 billion in accounts receivables, and $65 million in operating income. For Q2 2022, Tingo, Inc. reported over $268 million in revenues, over $104 million in cash and cash equivalents, over $1 billion in receivables, and over $122 million in operating income. And in Q3 2022, Tingo, Inc. reported over $291 million in revenues, over $246 million in cash and cash equivalents, over $386 million in accounts receivable, and over $268 million in gross profits. All of these amounts were based on fabricated UBA bank statements and all of them were completely made up. The actual amounts for each category were negligible.

24. The same was true on the fabricated UBA account statements for 2022, which reported about $1.62 billion in deposits against $2.85 million actually received, a year-end cash balance of $206.1 million against an actual $13.28, a purported fixed deposit account with a balance of $24.1 million in January 2022 that did not actually exist, and over $800 million in mobile phone purchases, and over $1.2 billion in total purchases that did not exist.

25. All of these numbers were entirely made up, with the actual amounts in each category being negligible. Nevertheless, these financial statements were included in Tingo, Inc.'s SEC filed financial statements because its outside auditors relied on fabricated UBA bank statements that UBA provided to them and orally confirmed as genuine.

**B. Mmobuosi and UBA Fraudulently Induce MICT.**

26. Armed with a successful transaction with an SEC registered company and a quarter of OTC trading and SEC financial reporting, in or about early 2022, Mmobuosi retained Lazard & Co. Limited ("Lazard") to solicit purchasers of Tingo Mobile with a focus on purchasers listed on a U.S. securities exchange. In or about January-February 2022, Lazard solicited Plaintiff (then MICT) and for the next several months made presentations about, and provided access to due diligence information for, Tingo Mobile, including its fraudulent financial statements, SEC reporting, and UBA bank statements.

27. In or about May and June 2022, Plaintiff conducted its initial due diligence into the transaction and retained Ernst & Young ("EY") to lead the financial due diligence. As part of that effort, EY reviewed Tingo Mobile's audited financial statements and supporting documentation, including the corroborating UBA bank statements. Based on those materials, EY issued a due diligence report to Plaintiff on June 10, 2022 that relied on this misrepresented financial information and reported the following financial performance for Tingo Mobile:

(US$ in thousands)

| **Item** | **FY18** | **FY19** | **FY20** | **FY21 (unaudited)** |
|---|---|---|---|---|
| Revenue | 440,383 | 455,558 | 585,255 | 865,838 |
| Reported EBITDA | 117,304 | 136,082 | 217,081 | 330,411 |
| EY-adjusted EBITDA | 117,329 | 136,065 | 216,967 | 327,733 |
| Cash at bank | 117,537 | 188,452 | 28,203 | 128,368 |
| Trade and other receivables | 435,337 | 204,463 | 241,954 | 1,400,917 |
| Prepayments | 310 | 126,902 | – | 984,899 |
| Trade and other payables | (390,717) | (228,436) | (20,535) | (2,029,727) |
| Net assets | 178,171 | 302,162 | 427,756 | 605,140 |

These figures were completely false. In fact, the values associated with every category were virtually zero.

28. Based on these fraudulent financial documents, including the false bank statements UBA fabricated, on December 1, 2022, Plaintiff acquired Tingo Mobile. In executing the transaction documents, Tingo, Inc. and Mmobuosi represented and warranted that the financial statements and information previously provided, including the UBA banking information, "accurately reflect the books and records of the Target Companies," were "prepared in accordance with GAAP," and "fairly present in all material respects the consolidated financial position" of Tingo Mobile. Mmobuosi and Tingo, Inc. further represented that Tingo Mobile's "financial books and records [were] complete and accurate in all material respects" and that it had not "been subject to or involved in any material fraud that involves management." All these representations were false.

29. As part of the transaction, Plaintiff loaned Tingo, Inc. approximately $47 million and also issued Tingo, Inc. 25,783,675 common shares and Series A and Series B preferred stock convertible into an additional 362,914,946 common shares. It also named Mmobuosi the CEO of Tingo Group Holdings, LLC ("TGH"), the wholly owned subsidiary through which Plaintiff owns Tingo Mobile.

30. As the Tingo Mobile transaction was progressing toward its December 2022 closing, in or about October 2022, Mmobuosi proposed Plaintiff also acquire Tingo Foods, which he directly owned. Like Tingo Mobile, Tingo Foods was a complete fiction created by the same scheme of made-up internal financial statements corroborated by fabricated UBA bank statements. These fictional internal financial records and corroborating UBA banking records were provided to Plaintiff and its advisors and misrepresented that Tingo Foods had generated more than $400 million of revenue, $556 million in credits, and $503 million in

withdrawals between its launch in September 2022 and December 31, 2022; held existing processed-food stock with an estimated cost value of $204 million; and was pursuing the construction of a $1.6 billion food-processing facility. Yet during that period, no UBA account even existed. Tingo Foods did not even open its operating account at UBA until February 2023. Thereafter, from March through September 2023, the account maintained a balance of approximately $100 and recorded only three transactions, withdrawals totalling approximately $20.

31. Based on these fake financial records, on February 9, 2023, Plaintiff (now named Tingo Group) acquired Mmobuosi's Tingo Foods from him directly in exchange for a $204 million note and named him the Tingo Foods CEO. The February 9, 2023 purchase agreement closed in New York and designated New York as the governing law and the forum selected for litigation. In the agreement, Mmobuosi also personally represented and warranted that Tingo Foods' "financial books and records [were] complete and accurate in all material respects," were prepared in accordance with International Financial Reporting Standards ("IFRS") and fairly presented its financial condition. He further represented that Tingo Foods had not "been subject to or involved in any material fraud that involved management."

32. Through this scheme, Mmobuosi not only misappropriated at least $47 million from Plaintiff but also monetized his fraud through massive insider trading. First, before the December 2022 merger, he personally and through TIHI sold shares in Tingo, Inc. that were inflated by the fraudulent financials of its Tingo Mobile subsidiary; and, after the merger, sold Tingo Group shares that now were inflated by its ownership of Tingo Mobile. Second, he had Tingo, Inc. sell inflated shares of Tingo Group itself and embezzled those proceeds. Third, he sold inflated shares of Tingo Group directly. The total number of shares traded by or at the direction of Mmobuosi exceeded 130 million and generated tens of millions in proceeds, which Mmobuosi shared with his co-conspirators, including those at UBA.

**C. UBA's Demonstrable and Extensive Direct Involvement in the Scheme.**

33. There is demonstrable evidence that UBA was a direct, knowing, and intentional conspirator in Mmobuosi's fraudulent scheme.

34. First, UBA provided copies of fabricated bank statements for Tingo Mobile and Tingo Foods covering the period January 1, 2022 through May 1, 2023 directly to Deloitte as part of its Tingo Group audit work for FY 2022 and FY 2023. These fabricated bank statements matched those in the possession of Tingo, Inc., Tingo Mobile, and Tingo Foods that were provided to Plaintiff and its advisors in the due diligence for these two acquisitions. This establishes UBA as the source and provider of the fabricated statements.

35. Specifically, on October 6, 2022, then MICT (soon to be renamed Tingo Group) engaged Deloitte US and its Deloitte affiliate Brightman Almagor Zohar & Co. ("Deloitte") as its independent registered public accounting firm. Deloitte's engagement would include the FY 2022 post-closing audit of Tingo Group, including its now consolidated Tingo Mobile subsidiary, and the audits of Tingo Group's Q1 and Q2 2023 financial statements, including Tingo Mobile and the newly acquired Tingo Foods. In connection with those audit reviews, Deloitte sent audit confirmation letters by DHL to UBA's official address in Nigeria and received responses directly from UBA confirming the false financial information represented on Tingo Group's own internal financials.

36. In addition, as part of the FY 2022 audit, on February 12, 2023, Tingo Group and Tingo Mobile instructed UBA to "provide directly to our auditors Deloitte (Brightman Almagor Zohar & Co.)" Tingo Mobile's account balances as of December 31, 2022. On March 1, 2023, UBA responded by a letter from UBA's "Internal Control and Compliance" department confirming in writing that Tingo Mobile's December 31, 2022 closing balance was approximately $206 million although the actual balance was approximately $13.

37. On March 14, 2023, these same UBA officials from the same department sent a follow-up letter that identified an additional "Active" fixed-term deposit in excess of $260 million as of December 31, 2022. In fact, Tingo Mobile had no such fixed deposit.

38. On April 21, 2023, this same department sent another letter to Deloitte confirming that as of March 31, 2023, Tingo Mobile's account cash balance was $206 million when, in fact, the balance was $25. In addition, the letter represented that there was a fixed account balance of approximately $266 million when, in fact, there was no such deposit. The letter also purported to provide FY 2022 and Q1 2023 financials for Tingo Foods. For FY 2022, the letter represented that Tingo Foods had approximately $54 million in cash when, in fact, it did not even have an account. It also reported approximately $80 million in cash by the end of Q1 2023 when, in fact, it had less than $100 in cash.

39. Finally, during the course of its ongoing 2023 audit work, Deloitte sought and received copies of the records from the Nigerian Inter-Bank Settlement System Electronic Fund Transfer records ("NEFTs") purportedly corroborating hundreds of millions of dollars in transactions entered by UBA into the Nigerian banking system. These types of records are extremely detailed and idiosyncratic and virtually impossible to fabricate without the assistance of, or outright fabrication by, the institution through which the transactions would have been entered. Yet, these records completely aligned with Tingo Mobile's internal false financial records and the fabricated bank statements UBA provided.

40. Second, after a June 2023 short-seller report entitled, "Tingo Group: Fake Farmers, Phones, and Financials—The Nigerian Empire That Isn't," claiming Tingo Mobile and Tingo Foods were frauds, Tingo Group retained the law firm White & Case LLP ("White & Case") to conduct an internal investigation into the claims. As part of that investigation, White & Case received fabricated bank statements directly from UBA via courier that likewise matched those previously used as part of the fraudulent scheme and cover-up.

41. Third, the law firm Steptoe & Johnson LLP ("Steptoe") subsequently replaced White & Case and also undertook to independently secure UBA bank statements directly from UBA personnel in Nigeria. As part of this effort, on or about August 4, 2023, the international law firm Dentons, acting at the direction of Steptoe, sent lawyers to UBA's main Nigerian office where they met with Tingo Mobile's and Tingo Foods' relationship manager. While there, a conference call was held with Steptoe in which the relationship manager's identity and position were verified. Immediately thereafter, in the presence of the Dentons lawyers, the relationship manager printed copies of the Tingo Mobile and Tingo Foods bank statements for the period January 1, 2023 through August 1, 2023. Dentons then directly couriered them to Steptoe in the United States. When Steptoe compared those records obtained directly from UBA's relationship manager and printed out in Dentons' presence from UBA's own reporting system, the account records were identical to the same fabricated UBA records for the same period that were previously provided to Deloitte as part of its audits.

42. Fourth, on August 16, 2023, Tingo Group's then-CEO and then-Board chairman, a member of its board and audit committee, conducted a conference call with the UBA relationship manager, in which the manager confirmed the purported accuracy of the fabricated account statements Steptoe had received directly from UBA.

43. Fifth, much of this UBA support came after the June 2023 short selling report and Tingo Group's retention of law firms to investigate the claims. The fact that UBA continued to provide fabricated bank statements to Tingo Group's auditors, law firms, and audit committee members after the fraud had been publicly identified reveals a committed co-conspirator actively attempting to conceal the fraud.

44. In December 2023, the SEC filed a civil complaint against Mmobuosi and certain U.S. entities he controlled in the United States District Court for the Southern District of New York. In January 2024, the U.S. Department of Justice unsealed an indictment against

Mmobuosi in the Southern District of New York for Conspiracy to Commit Securities Fraud, Securities Fraud, and Filing False SEC Filings.

45. On February 20, 2024, Tingo Group announced its decision to voluntarily delist its common stock from NASDAQ, citing noncompliance with financial-reporting, minimum-bid-price, and audit-committee requirements. On March 1, 2024, Tingo Group filed a Form 25 providing notice of removal from listing and registration. At the time, Tingo Group's reported balance sheet was reduced to a few million dollars and its previous enterprise value of approximately $367 million had evaporated. The SEC subsequently obtained a default judgment against Mmobuosi, ordering disgorgement of $156,672,705.86, cancellation of all shares of Tingo, Inc. (now known as Agri-Fintech Holdings, Inc.) stock owned by Mmobuosi, and civil penalties.

46. On March 31, 2026, the U.S. District Court for the District of New Jersey appointed the Receiver for Tingo Group in the Receiver Action. Pursuant to the Receivership Order, the Receiver has taken control of Tingo Group's assets, including its claims against UBA, and brings this action to recover for the receivership estate the losses Tingo Group suffered as a result of the scheme described above.

47. As a result of UBA's fraud, aiding and abetting of fraud, conspiracy, aiding and abetting of Mmobuosi's breaches of fiduciary duty, negligent misrepresentation, and unjust enrichment, Plaintiff has suffered damages in an amount to be determined at trial, but of no less than $47 million in lost funds and the loss of not less than $367 million in enterprise value.

## CAUSES OF ACTION
## COUNT I
(Fraud)

48. Plaintiff re-alleges the allegations set forth in the preceding paragraphs as if fully incorporated herein.

49. As alleged in paragraphs 21-43, UBA fabricated bank statements to corroborate Tingo Mobile and Tingo Foods fictional financial statements for FY2021, Q1 2022, Q2 2022, Q3 2022, FY2022, Q1 2023, Q2 2023, and Q3 2023 for the purpose of misleading Plaintiff, its auditors, due diligence advisors, and regulators. As part of this fraud, UBA provided fabricated bank statements for FY2021 and Q1 2022 and Q2 2022 to Plaintiff and its due diligence advisor as part of the Tingo Mobile due diligence and thereafter as part of the pre-transaction Q3 2022 SEC filings on which Plaintiff relied. Thereafter, it provided fabricated bank statements and directly misrepresented the genuineness of those records to Plaintiff's independent public accountant Deloitte as part of the FY2022 audit and preparation of the financial statements and SEC filings for Q1 2023, Q2 2023, and Q3 2023. In addition, it provided fabricated bank statements to Plaintiff's law firms White & Case and Steptoe in 2023 and misrepresented the accuracy of those bank statements to Tingo Mobile directly in August 2023. Finally, it assisted in the preparation of fabricated NEFTs provided to Deloitte as part of its audits and review of Plaintiff's financial statements.

50. As alleged in paragraphs 21-43, UBA's fabrication, dissemination, and authentication of false bank statements and related records misrepresenting hundreds of millions of dollars in revenues, cash balances, receivables and other material financial information when, in fact, the actual amounts of such categories were virtually zero, fraudulently induced Plaintiff into the Tingo Mobile and Tingo Foods transactions and, thereafter, concealed the fraud from detection in order to enable Mmobuosi to misappropriate

tens of millions of dollars, engage in extensive insider trading, and destroy Tingo Group's enterprise value.

51. UBA acted with scienter. It was in possession and aware of the actual account balances, transaction volumes, and other information it was misrepresenting, intentionally prepared false bank statements misrepresenting these amounts, and provided these fabricated records to Plaintiff and its advisors, and misrepresented their accuracy, knowing the records were materially false.

52. Plaintiff justifiably relied on the fabricated UBA records presented before the relevant closings in deciding to enter both transactions and thereafter in the preparation of its financial statements and internal investigation into allegations of fraud.

53. But for UBA's fraud before and after the transactions, Plaintiff would not have entered into the transactions, paid almost $50 million to acquire these companies, had that $50 million misappropriated, incurred millions more in advisor fees, or suffered the complete loss of its enterprise value as a result of the fraud.

54. Plaintiff is entitled to recoup these costs and to punitive damages.

**COUNT II**
(Aiding and Abetting Fraud)

55. Plaintiff re-alleges the allegations set forth in the preceding paragraphs as if fully incorporated herein.

56. As alleged in paragraphs 21-43 above, Mmobuosi orchestrated a massive fraud on Plaintiff by misrepresenting Tingo Mobile and Tingo Foods as operational businesses with hundreds of millions of dollars in revenue and bank deposits, when, in fact, they had none.

57. Based on these fraudulent misrepresentations, including the false bank statements UBA fabricated, on December 1, 2022, Plaintiff acquired Tingo Mobile. In executing the transaction documents, Tingo, Inc. and Mmobuosi represented and warranted that the financial statements and information previously provided, including the UBA banking

information, "accurately reflect the books and records of the Target Companies," were "prepared in accordance with GAAP," and "fairly present in all material respects the consolidated financial position" of Tingo Mobile. Mmobuosi and Tingo, Inc. further represented that Tingo Mobile's "financial books and records [were] complete and accurate in all material respects" and that it had not "been subject to or involved in any material fraud that involves management." All these representations were false.

58. Based on equally fictitious financial records, including fabricated UBA banking statements, on February 9, 2023, Plaintiff (now named Tingo Group) acquired Mmobuosi's Tingo Foods from him directly in exchange for a $204 million note and named him the Tingo Foods CEO. The February 9, 2023 purchase agreement closed in New York and designated New York as the governing law and the forum selected for litigation. In the agreement, Mmobuosi also personally represented and warranted that Tingo Foods' "financial books and records [were] complete and accurate in all material respects," were prepared in accordance with International Financial Reporting Standards ("IFRS") and fairly presented its financial condition. He further represented that Tingo Foods had not "been subject to or involved in any material fraud that involved management."

59. As alleged in paragraphs 21-43, both of these transactions depended on UBA fabricated bank statements to corroborate Tingo Mobile and Tingo Foods fictional financial statements for FY2021, Q1 2022, Q2 2022, Q3 2022, FY2022, Q1 2023, Q2 2023, and Q3 2023, which were used to mislead Plaintiff, its auditors, due diligence advisors, and regulators. As part of this fraud, UBA provided fabricated bank statements for FY2021 and Q1 2022 and Q2 2022 to Plaintiff and its due diligence advisor as part of the Tingo Mobile due diligence and thereafter as part of the pre-transaction Q3 2022 SEC filings on which Plaintiff relied. Thereafter, it provided fabricated bank statements and directly misrepresented the genuineness of those records to Plaintiff's independent public accountant Deloitte as part of the FY2022

audit and preparation of the financial statements and SEC filings for Q1 2023, Q2 2023, and Q3 2023. In addition, it provided fabricated bank statements to Plaintiff's law firms White & Case and Steptoe in 2023 and misrepresented the accuracy of those bank statements to Tingo Group's then CEO Darren Mercer and its then Chairman John Scott directly in August 2023. Finally, it assisted in the preparation of fabricated NEFTs provided to Deloitte as part of its audits and review of Plaintiff's financial statements.

60. As alleged in paragraphs 21-43, UBA's fabrication, dissemination, and authentication of false bank statements and related records misrepresenting hundreds of millions of dollars in revenues, cash balances, receivables and other material financial information when, in fact, the actual amounts of such categories were virtually zero fraudulently induced Plaintiff into the Tingo Mobile and Tingo Foods transactions and, thereafter, concealed the fraud from detection in order to enable Mmobuosi to misappropriate tens of millions of dollars, engage in extensive insider trading, and destroy Tingo Group enterprise value.

61. UBA acted with scienter. It was in possession and aware of the actual account balances, transaction volumes, and other information it was misrepresenting, intentionally prepared false bank statements misrepresenting these amounts, and provided these fabricated records to Plaintiff and its advisors, and misrepresented their accuracy, knowing the records were materially false.

62. Plaintiff justifiably relied on the fabricated UBA records presented before the relevant closings in deciding to enter both transactions and thereafter in the preparation of its financial statements and internal investigation into allegations of fraud.

63. But for UBA's aiding and abetting fraud before and after the transactions, Plaintiff would not have entered into the transactions, paid almost $50 million to acquire these

companies, incurred millions more in advisor fees, or suffered the complete loss of its enterprise value as a result of the fraud.

64. By this conduct, UBA knowingly and intentionally aided and abetted Mmobuosi's fraud.

**COUNT III**
(Civil Conspiracy)

65. Plaintiff re-alleges the allegations set forth in the preceding paragraphs as if fully incorporated herein.

66. As alleged in paragraphs 21-43 above, Mmobuosi orchestrated a massive fraud on Plaintiff by misrepresenting Tingo Mobile and Tingo Foods as operational businesses with hundreds of millions of dollars in revenue and bank deposits, when, in fact, they had none.

67. Based on these fraudulent misrepresentations, including the false bank statements UBA fabricated, on December 1, 2022, Plaintiff acquired Tingo Mobile. In executing the transaction documents, Tingo, Inc. and Mmobuosi represented and warranted that the financial statements and information previously provided, including the UBA banking information, "accurately reflect the books and records of the Target Companies," were "prepared in accordance with GAAP," and "fairly present in all material respects the consolidated financial position" of Tingo Mobile. Mmobuosi and Tingo, Inc. further represented that Tingo Mobile's "financial books and records [were] complete and accurate in all material respects" and that it had not "been subject to or involved in any material fraud that involves management." All these representations were false.

68. Based on equally fictitious financial records, including fabricated UBA banking statements, on February 9, 2023, Plaintiff (now named Tingo Group) acquired Mmobuosi's Tingo Foods from him directly in exchange for a $204 million note and named him the Tingo Foods CEO. The February 9, 2023 purchase agreement closed in New York and designated New York as the governing law and the forum selected for litigation. In the agreement,

Mmobuosi also personally represented and warranted that Tingo Foods' "financial books and records [were] complete and accurate in all material respects," were prepared in accordance with International Financial Reporting Standards ("IFRS") and fairly presented its financial condition. He further represented that Tingo Foods had not "been subject to or involved in any material fraud that involved management."

69. As alleged in paragraphs 21-43, both of these transactions depended on UBA fabricated bank statements to corroborate Tingo Mobile and Tingo Foods fictional financial statements for FY2021, Q1 2022, Q2 2022, Q3 2022, FY2022, Q1 2023, Q2 2023, and Q3 2023, which were used to mislead Plaintiff, its auditors, due diligence advisors, and regulators. As part of this fraud, UBA provided fabricated bank statements for FY2021 and Q1 2022 and Q2 2022 to Plaintiff and its due diligence advisor as part of the Tingo Mobile due diligence and thereafter as part of the pre-transaction Q3 2022 SEC filings on which Plaintiff relied. Thereafter, it provided fabricated bank statements and directly misrepresented the genuineness of those records to Plaintiff's independent public accountant Deloitte as part of the FY2022 audit and preparation of the financial statements and SEC filings for Q1 2023, Q2 2023, and Q3 2023. In addition, it provided fabricated bank statements to Plaintiff's law firms White & Case and Steptoe in 2023 and misrepresented the accuracy of those bank statements to Tingo Mobile directly in August 2023. Finally, it assisted in the preparation of fabricated NEFTs provided to Deloitte as part of its audits and review of Plaintiff's financial statements.

70. As alleged in paragraphs 21-43, UBA's fabrication, dissemination, and authentication of false bank statements and related records misrepresenting hundreds of millions of dollars in revenues, cash balances, receivables and other material financial information when, in fact, the actual amounts of such categories were virtually zero fraudulently induced Plaintiff into the Tingo Mobile and Tingo Foods transactions and, thereafter, concealed the fraud from detection in order to enable Mmobuosi to misappropriate

tens of millions of dollars, engage in extensive insider trading, and destroy Tingo Group enterprise value.

71. UBA acted with scienter. It was in possession and aware of the actual account balances, transaction volumes, and other information it was misrepresenting, intentionally prepared false bank statements misrepresenting these amounts, and provided these fabricated records to Plaintiff and its advisors, and misrepresented their accuracy, knowing the records were materially false.

72. Plaintiff justifiably relied on the fabricated UBA records presented before the relevant closings in deciding to enter both transactions and thereafter in the preparation of its financial statements and internal investigation into allegations of fraud.

73. But for UBA's conspiracy and overt acts before and after the transactions, Plaintiff would not have entered into the transactions, paid almost $50 million to acquire these companies, incurred millions more in advisor fees, or suffered the complete loss of its enterprise value as a result of the fraud.

74. By this conduct, UBA knowingly and intentionally conspired with Mmobuosi and Tingo, Inc. to defraud Plaintiff.

75. Plaintiff is entitled to recover these damages and to punitive damages.

**COUNT IV**
(Aiding and Abetting Breach of Fiduciary Duty)

76. Plaintiff re-alleges the allegations set forth in the preceding paragraphs as if fully incorporated herein.

77. Mmobuosi had a fiduciary relationship with and owed fiduciary duties to Plaintiff. Following the Tingo Mobile and Tingo Foods transactions, Mmobuosi became CEO of TGH, the wholly owned subsidiary of Plaintiff through which Plaintiff owns Tingo Mobile and Tingo Foods. As an officer and fiduciary of Plaintiff's wholly owned subsidiary TGH,

which wholly owns and controls Tingo Mobile and Tingo Foods, Mmobuosi owed duties of care, loyalty, and good faith to Plaintiff.

78. UBA had actual knowledge of, and substantially assisted, Mmobuosi's breaches of his fiduciary duties. As alleged in paragraphs 21-43, UBA fabricated bank statements to corroborate Tingo Mobile and Tingo Foods fictional financial statements for FY2021, Q1 2022, Q2 2022, Q3 2022, FY2022, Q1 2023, Q2 2023, and Q3 2023 for the purpose of misleading Plaintiff, its auditors, due diligence advisors, and regulators. As part of this fraud, UBA provided fabricated bank statements for FY2021 and Q1 2022 and Q2 2022 to Plaintiff and its due diligence advisor as part of the Tingo Mobile due diligence and thereafter as part of the pre-transaction Q3 2022 SEC filings on which Plaintiff relied. Thereafter, it provided fabricated bank statements and directly misrepresented the genuineness of those records to Plaintiff's independent public accountant Deloitte as part of the FY2022 audit and preparation of the financial statements and SEC filings for Q1 2023, Q2 2023, and Q3 2023. In addition, it provided fabricated bank statements to Plaintiff's law firms White & Case and Steptoe in 2023 and misrepresented the accuracy of those bank statements to Tingo Mobile directly in August 2023. Finally, it assisted in the preparation of fabricated NEFTs provided to Deloitte as part of its audits and review of Plaintiff's financial statements.

79. As alleged in paragraphs 21-43, UBA's fabrication, dissemination, and authentication of false bank statements and related records misrepresenting hundreds of millions of dollars in revenues, cash balances, receivables and other material financial information when, in fact, the actual amounts of such categories were virtually zero fraudulently induced Plaintiff into the Tingo Mobile and Tingo Foods transactions and, thereafter, concealed the fraud from detection in order to enable Mmobuosi to misappropriate tens of millions of dollars, engage in extensive insider trading, and destroy Tingo Group enterprise value.

80. Plaintiff is entitled to recover these damages and to punitive damages.

**COUNT V**
(Negligent Misrepresentation)

81. Plaintiff re-alleges the allegations set forth in the preceding paragraphs as if fully incorporated herein. Plaintiff pleads this claim in the alternative to its fraud and aiding and abetting claims.

82. UBA's failure to have policies, procedures, and compliance processes necessary to prevent the egregious fraud committed by its personnel was grossly negligent.

83. But for this gross negligence, Plaintiff would not have entered into these transactions, paid millions of dollars to acquire these companies, or turned control over to Mmobuosi who used that control to embezzle the monies Plaintiff infused into the companies.

84. As a direct and proximate result of UBA's gross negligence, Plaintiff has suffered the loss of the tens of millions of dollars in transaction consideration and costs, millions of dollars in pre-transaction cash infused into the companies and embezzled by Mmobuosi after the transactions, and hundreds of millions of dollars in enterprise value.

85. Plaintiff is entitled to recoup these damages proximately caused by UBA's gross negligence.

**COUNT VI**
(Unjust Enrichment)

86. Plaintiff re-alleges the allegations set forth in the preceding paragraphs as if fully incorporated herein. Plaintiff pleads this claim in the alternative to its fraud and aiding and abetting claims.

87. UBA was remunerated by Mmobuosi for its participation in his fraudulent scheme and participated in the scheme in exchange for this remuneration.

88. As a result, UBA has been unjustly enriched to Plaintiff's detriment. Equity and good conscience militate against permitting UBA to retain these benefits.

89. Plaintiff is entitled to full restitution of any and all amounts by which UBA was unjustly enriched, including all fees, revenues, and other benefits UBA received in connection with the Tingo accounts, the Tingo Mobile and Tingo Foods transactions, and any other transactions related to Mmobuosi and his affiliated entities, in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests the following relief:

a. Compensatory damages, in an amount to be determined at trial, but of no less than $367 million;

b. Punitive damages in an amount to be determined at trial;

c. Restitution and disgorgement of all benefits unjustly obtained by UBA;

d. An award of pre-judgment and post-judgment interest in the maximum amount allowed by law;

e. Such other and further legal or equitable relief as this Court may deem just and proper.

Dated: October 29, 2026

Respectfully submitted,

**Brithem LLP**

*/s/ Michael J. Bowe*

Michael J. Bowe
Lauren Tabaksblat
565 Fifth Avenue
New York, NY 10019
mbowe@brithem.com
ltabaksblat@brithem.com

*Counsel for Plaintiff David Stapleton, as Receiver for Tingo Group, Inc.*